UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:  WEEKS LANDING, LLC; SHELL
COVE MARINE PROPERTIES, LLC; ESTERO
COMMONS, LLC; 131 GROUP, INC.,

                        Debtors.

_____

MICHELE PESSIN,

                Appellant,

vs.                       Case No.  2:09-cv-626-FtM-29
                               Bankr. No. 9:06-bk-01721-ALP
                               Adv. No. 9:09-ap-00170-ALP

RCMP ENTERPRISES, LLC; CHRISTOPHER
WARTELA,

                Appellees.

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on an appeal from the Bankruptcy Court's June 29, 2009 Order Granting Motion to Dismiss With Prejudice, or in the Alternative, for Summary Judgment By RCMP Enterprises, LLC and Christopher Wartella, Individually (Doc. #1-2)[1] issued in an adversary proceeding initiated by appellant Michele Pessin.  The Court has received an initial brief of appellant (Doc. #10) proceeding *pro se*, an Answer Brief of

_____

[1]The Court will hereinafter cite documents filed with the District Court as "Doc.", documents filed in the Adversary Proceeding as "Adv. Doc.", and documents filed in the Bankruptcy case as "Bankr. Doc."  Copies of the relevant documents are included in the record transmitted by the Bankruptcy Court, the parties on appeal, or otherwise provided on a compact disc in the court file.

Appellees (Doc. #11), a Reply Brief (Doc. #12), and Supplement to
Reply Brief (Doc. #13) by appellant.  After examination of the
briefs and the record, the Court finds that the facts and legal
arguments are adequately presented and the decisional process would
not be significantly aided by oral argument.  For the reasons set
forth below, the Court concludes that the Bankruptcy Court's order
must be reversed and the case remanded to the Bankruptcy Court for
further proceedings.

## I.

The United States District Court functions as an appellate
court in reviewing decisions of the United States Bankruptcy Court.
In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994).
The legal conclusions of the bankruptcy court are reviewed *de novo*,
while findings of fact are reviewed for clear error.  In re Globe
Mfg. Corp., 567 F.3d 1291, 1296 (11th Cir. 2009).  A finding of
fact is clearly erroneous when, "although there is evidence to
support it, the reviewing court on the entire record is left with
a definite and firm conviction that a mistake has been committed."
Crawford v. W. Electric Co., Inc., 745 F.2d 1373, 1378 (11th Cir.
1984)(citing United States v. United States Gypsum Co., 333 U.S.
364, 395 (1948)); In re Walker, 515 F.3d 1204, 1212 (11th Cir.
2008).  The Court liberally construes the filings of *pro se*
litigants.  In re Laurent, 149 Fed. Appx. 833, 837 (11th Cir.
2005).

## II.

### A.  Pre-Bankruptcy Events

Michele Pessin (Pessin or appellant) formed Weeks Landing, LLC (Weeks Landing), Shell Cove Marine Properties, LLC (Shell Cove), and Estero Commons, LLC (Estero), all Florida limited liability companies, and at all relevant times was the manager and sole member of each.  Pessin also incorporated 131 Group, Inc. (131 Group), a Delaware corporation, and was its President.  All the entities were owned and controlled by Pessin.  Utilizing Weeks Landing, Pessin bought a portion of a property known as the Weeks Fish Camp in Bonita Springs, Florida with the intent to develop the property into a mixed-use marina.  Additionally, Shell Cove owned four undeveloped lots totaling approximately 12 acres; Estero Commons owed approximately 28 acres of unimproved real property; and 131 Group owned approximately 170 acres of unimproved real property, all in the Bonita Springs area.  (Bankr. Doc. #57.) There came a point in time, however, when Pessin was unable to proceed with development of the project.

By early 2006, Christopher Wartella (Wartella) and Stanley Malinowski (Malinowski) were considering an agreement with Pessin for joint ownership and development of the property.  Wartella and Malinowski formed RCMP Enterprises, LLC (RCMP), a Pennsylvania limited liability company, for that purpose.

On or about April 8, 2006, a Confidentiality and Non-Compete Agreement (the "Confidentiality Agreement", Doc. #4-20) was signed between Pessin individually, Weeks Landing, Shell Cove, and 131 Group as "Owner" and RCMP, Wartella, and Malinowski as "Recipient." The Owners agreed to disclose confidential and proprietary information to the Recipients relating to the property commonly referred to as the "Weeks Fish Camp" property and adjacent parcels (the Property). The Recipients agreed not to use or disclose the information, other than for the purpose of determining the viability of entering into an agreement with the Owners for the joint ownership and development of the Property and preparing a proposal for such an agreement. The Recipients also agreed not to acquire any lands within the Property without the Owner's consent, and not to use the confidential information for the purpose of bidding on the purchase of the Property in any subsequent bankruptcy proceeding initiated by the Owner. The Confidentiality Agreement was to be effective for three years, and was governed by and to be construed according to the laws of the United States and the State of Florida. The parties agreed that these obligations would not be affected by bankruptcy proceedings.

## B. Bankruptcy Case

On April 14, 2006, Weeks Landing, Shell Cove, Estero Commons, and 131 Group (collectively Debtors) filed Chapter 11 voluntary petitions for reorganization in the Bankruptcy Court in the Middle

-4-

District of Florida.   Weeks Landing estimated liabilities of approximately $15.7 million and assets of about $18 million (Bankr. Doc. #30); Shell Cove estimated liabilities of approximately $3.9 million and assets of approximately $6.2 million (id., Doc. #39); 131 Group estimated liabilities of $15.3 million and assets of about $11 million (id., Doc. #38); and Estero Commons estimated liabilities of approximately $3.2 million and assets of approximately $2.1 million (id., Doc. #40).   On May 2, 2006, the Bankruptcy Court ordered the four separate cases to be jointly administered under the lowest numbered case.   The Debtors remained in possession of their respective properties and continued to operate their businesses.

On June 7, 2006, debtors Weeks Landing and Shell Cove filed an Emergency Motion (Bankr. Doc. #57) requesting approval of a Term Sheet with RCMP, and post-petition financing.   These debtors asserted that they had meaningful equity in their real properties, and had commenced the bankruptcy cases "in order to gain much needed breathing room from their creditors, and to identify a lender, financier, purchaser or other transaction partner to provide the Debtors the liquidity they need to restructure and emerge from these cases."   (Id., Doc. #57, ¶ 10.)   The motion reported that these debtors had been in good faith negotiations with RCMP, which culminated in a June 2, 2006 Term Sheet between debtors Weeks Landing and Shell Cove and RCMP.   These debtors

summarized the main terms pursuant to which RCMP would fund Debtors' reorganization and a reorganization plan. The Term Sheet (Bankr. Doc. #57, Exh. A) contemplated the formation of NEWCO, a limited liability company to be owned equally by Pessin and RCMP or its designee. The reorganization plan would provide that NEWCO acquire marketable title to the Weeks Fish Camp property, satisfy the secured claims of two entities, arrange for Exit Financing, and contribute $930,000 toward administrative expenses and priority and general unsecured claims. RCMP agreed to loan Debtors $500,000 in secured debtor in possession (DIP) financing. RCMP was required to complete its due diligence inquiries by a date certain. RCMP posted a $1 million deposit refundable during the due diligence period, but which was to be forfeited to Debtors if RCMP breached its obligations under the Term Sheet.

A hearing on the debtors' emergency motion was held on June 20, 2006. On June 29, 2006, the Bankruptcy Court entered a 29-page Order (the Term Sheet Order, Bankr. Doc. #71) approving the Term Sheet and post-petition financing. The Bankruptcy Court made specific factual findings about the background of the development project, as well as the Term Sheet and financing. Among other things, the Bankruptcy Court found that the post-petition financing "has been negotiated in good faith and at arm's-length," and that the terms were "fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary

-6-

duties, and are supported by reasonably equivalent value and fair consideration."  (Id., ¶¶ T, U.)

On motions by these two debtors, the Bankruptcy Court entered a series of Orders on July 24, 2006, September 25, 2006, October 31, 2006, November 9, 2006, and November 21, 2006 amending the Term Sheet Order to extend the time period for RCMP's due diligence and make various other modifications.  (See Bankr. Docs. ## 85, 126, 155, 165, 177.)

By October-November, 2006, there was a falling out between Pessin and RCMP.  In a November 20, 2006 Response to Motion to Extend Exclusive Period By Debtors and Cross-Motion to Terminate Exclusivity (Bankr. Doc. #173), RCMP reported frustration with Pessin since the Term Sheet Order, and stated that RCMP did not wish to support a reorganization plan proposed by Debtors or to engage in business with Pessin following the effective date of any plan.  RCMP stated, however, that it did wish to propose its own plan, and did have the intent and means to consummate the acquisition in a fair way.  RCMP requested that the Bankruptcy Court allow any party to file a reorganization plan after November 30, 2006.[2]

On November 22, 2006, RCMP filed a motion requesting appointment of a Chapter 11 trustee.  (Bankr. Doc. #179.)  On the

_____

[2]The Bankruptcy Court had previously entered orders allowing only Debtors to submit a proposed reorganization plan.

same day, debtors filed a motion to compel RCMP to comply with the Term Sheet Order. (Id., Doc. #180.)  On December 12, 2006, Weeks Landing and Shell Cove filed an application to retain Gerard A. McHale (McHale) and his P.A. (collectively McHale) as Chief Restructuring Officer for Weeks Landing and Shell Cove.  On December 19, 2006, the Bankruptcy Court entered an Order (Bankr. Doc. #224) approving the retention of McHale as Chief Restructuring Officer pursuant to the terms of a Special Project Work Agreement (the Agreement).  The Agreement provides in part:

> Gerard A. McHale, Jr. will be or serve as the chief restructuring officer. The companies will give full authority and control of the Companies as the Chief Restructuring Officer, including control over direction of the professionals employed by the Companies. For the avoidance of doubt, immediately upon approval of this agreement by the bankruptcy court (and subject to such further approval of the bankruptcy court as the context may require), Gerard A. McHale, Jr. will have the sole and exclusive authority for all operational issues, including without limitation, the authority to negotiate of any Transaction, negotiating the terms of any debtor in possession financing, and to execute and sign any and all documents on behalf of the Companies, including but not limited to checks and other means of payment, federal or state securities filings, tax filings, contracts, plans, disclosure statements, documents required of Debtors in Chapter 11, or representations and warranties on behalf of the Companies. McHale, P.A. shall provide courtesy copies of all documents to Owner prior to execution and thereafter provide fully executed copies.

(Bankr. Doc. #224, Exh. A, p. 6, § III.D.)  The Agreement was signed by Pessin on behalf of Weeks Landing and Shell Cove, and each page was initialed by Pessin.

RCMP continued to negotiate, but with McHale instead of Pessin.  On April 9, 2007, debtors requested the Bankruptcy Court's permission to obtain additional financing from RCMP pursuant to certain agreed-upon terms, including a broadly worded General Release.  (Bankr. Doc. #291.)  After a hearing, the Bankruptcy Court approved additional DIP financing from RCMP in the amount of $177,389.90.  In a May 1, 2007 Order (Bankr. Doc. #301), the Bankruptcy Court adopted its prior findings in support of post-petition financing, and approved the additional DIP financing.  The Order stated in part:

> The Post-Petition Financing (including the Additional Financing) has been negotiated in good faith and at arm's-length between the Debtors and the Lender, and any credit extended and loans made to the Debtors pursuant to this Order shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, section 364(e) of the Bankruptcy Code.

(Id. at ¶G).  See also id., ¶10 ("The Lender has acted in good faith in all respects").  The Bankruptcy Court also found that "[t]he terms of the Additional Financing are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration."  (Id. at ¶ H.)  The Order authorized Debtors' Chief Restructuring Officer to execute the release attached to the motion.  (Id. at ¶ 11.)

The General Release (Doc. #2-6; Adv. Doc. #9-3) was signed on July 18, 2007, by McHale as Chief Restructuring Officer for Weeks

Landing and Shell Cove.   In general, debtors Weeks Landing and Shell Cove broadly released RCMP, United Penn Investment Group, LLC, and others of all claims of every kind whether accrued or not and whether known or not, which the Releasor ever had or may have based in whole or in part on anything "from the beginning of the world" to the date of execution of the Release related to the Debtors or the bankruptcy cases.   Id.

On July 31, 2007, RCMP filed a Joint Plan of Reorganization (Bankr. Doc. #352) for Weeks Landing and Shell Cove, and a Disclosure Statement (Bankr. Doc. #353).   On November 16, 2007, RCMP filed a Supplement to Disclosure Statement (Bankr. Doc. #409). On the same day, Carmelo J. Natoli filed a Plan of Reorganization for all four entities on behalf of the Carmelo J. Natoli Revocable Trust and Peninsula Sailfish, LLC., along with a Disclosure Statement.   (Bankr. Docs. ## 407, 408.)[3]   Pessin filed Objections (Bankr. Docs. ## 378, 411) to the sufficiency of the disclosure statements.   On December 20, 2007, the Bankruptcy Court entered an Order (Bankr. Doc. #415) overruling the objections, approving the disclosure statements, fixing dates by which written acceptances or rejections of the plans were to be made and filed, and setting a hearing on confirmation of the plans.

---

[3]A First Modification (Bankr. #428), Clarification (Bank. #430), and a Second Modification (Bankr. #446) were eventually filed.

On January 16, 2008, Pessin filed an Objection to Confirmation of Plans of Reorganization Filed by Carmelo Natoli and RCMP (Doc. #3-12; Bankr. Doc. #437).  Pessin argued in part that there had been violations of the April 8, 2006 Confidentiality and Non-Compete Agreement; that RCMP and Natoli engaged in obstructive behavior and misconduct; that RCMP and Natoli would walk away with all the assets, including the properties, leaving nothing for Pessin or her creditors; that the releases they sought were inappropriate; and that the Plans were not made in good faith.  The Objection also raised specific issues with portions of both plans.

On January 22, 2008, Natoli and RCMP filed a Joint Motion For Confirmation (Doc. #3-14, Bankr. Doc. #447) of their Joint Plan of Reorganization.  The Bankruptcy Court conducted an initial confirmation hearing on January 23, 2008.  In a written Order (Bank. Doc. #454), filed on February 21, 2008, the Bankruptcy Court found that RCMP's plan was withdrawn and Natoli's Plan was the joint plan being proposed by both Natoli and RCMP; made certain findings regarding Natoli's Plan; and set a hearing for certain issues, including good faith, Pessin's Objection, and any issue related to the proposed releases.

On March 5, 2008, the Bankruptcy Court held the continued hearing to consider the outstanding issues related to confirmation of the Plan of Reorganization, as amended.  Natoli and RCMP announced the following modification of the Plan: (1) The release

provisions of the Plan would not encompass any claim or cause of action that Pessin, individually, may have against Natoli or RCMP; and (2) any claim or cause of action that Pessin may have against Natoli or RCMP shall be filed in the Bankruptcy Court within 180 days of the confirmation order, with the Bankruptcy Court retaining exclusive jurisdiction to determine any such claim or cause of action.  (See generally Bankr. Doc. #470.)

On March 25, 2008, the Bankruptcy Court entered an Order on Continued Confirmation Hearing.  The Bankruptcy Court sustained Pessin's Objection in part and overruled it in part.  Natoli and RCMP were ordered to file a modification to the plan memorializing the oral modification announced regarding Pessin.  Pessin was ordered to file any objections to the modification within ten days of service.  The Bankruptcy Court further found that "Natoli's Plan has been proposed in good faith and not by any means forbidden by law."  (Id., ¶ 3.)  The Bankruptcy Court stated it would enter an order confirming Natoli's Plan upon resolution of the Pessin Modification and any objections to it.  (Id., ¶ 9.)

On April 7, 2008, Pessin filed an Objection (Doc. #4-1; Bankr. Doc. #472) to the Order on Continued Confirmation Hearing, arguing that she was not given sufficient time at the March 5, 2008 hearing, and that her claims against RCMP and Natoli were more comprehensive than had been represented to the court.  Pessin

detailed her version of the facts as to the entities and the potential claims.

On July 23, 2008, Natoli and RCMP filed a Third Modification of the Joint Plan of Reorganization (Doc. #4-8; Bankr. Doc. #520), setting forth the Pessin modification.  On August 20, 2008, Pessin through counsel filed an Objection to Confirmation of Third Modification of the Joint Plan of Reorganization (Doc. #4-13; Bankr. Doc. #526), asserting that the Third Modification conflicted with the March 25, 2008 Order of the Bankruptcy Court in three specific ways.

On September 15, 2008, the Bankruptcy Court issued an Order Confirming Plan (Doc. #4-14; Bankr. Doc. #527).  The Joint Plan reviewed by the Bankruptcy Court consisted of the Natoli Plan of Reorganization, as amended by the First Modification, the Clarification, the Second Modification, and the Third Modification. The Bankruptcy Court noted that it had previously issued a First Confirmation Order and a Second Confirmation Order, and the only remaining issue was the Third Modification, including the provisions relating to Pessin and her objections to those provisions.  The Bankruptcy Court adopted its findings and conclusions in the First Confirmation Order and the Second Confirmation Order, and confirmed the Joint Plan "in all respects as if fully set forth herein." Id., ¶ 1.  The Bankruptcy Court overruled Pessin's Objections, but also stated:

> Nothing in the Joint Plan shall be deemed to release, discharge, or modify any claim that Pessin, individually, may have against either RCMP or Natoli.  **Pessin shall have a period of 180 days following the entry of this Order** within which to file an adversary proceeding in this Court against either Natoli or RCMP (or any affiliate of either) premised upon or in connection with or related to any alleged act, transaction, conduct, occurrence, action, error, omission, or other behavior of any kind in or in connection with the Debtors, the Debtors' property, or these bankruptcy cases.  The Court shall retain exclusive jurisdiction over any such claim or cause of action.  Any such claim or cause of action shall be channeled exclusively to this Court.  **Absent filing an adversary proceeding within the 180 day time period, any such claim or cause of action shall be forever barred.  This Court shall retain jurisdiction to enforce the provisions of this paragraph, without limitation.** . . .

(Doc. #4-14, ¶ 2)(emphasis in original).   The Bankruptcy Court further ordered that the various real properties described in the Joint Plan be transferred to Natoli or RCMP free and clear of any and all interests.  Additionally, the Bankruptcy Court ordered that RCMP and others "are hereby generally released of and from any and all claims, demands or causes of action held by any of the Debtors or their respective bankruptcy estates subject ONLY to the provisions in paragraph 2 above relating to Pessin, individually."  (Doc. #4-14, ¶ 6.)  A Notice of Confirmation (Doc. #4-15; Bankr. Doc. #528) was filed the same day.

On September 25, 2008, Pessin, while represented by counsel, filed a *pro se* Request for Extension of Time to File Notice of Appeal (Doc. #4-16; Bankr. Doc. #531).  On October 2, 2008, the

Bankruptcy Court entered an Order (Doc. #4-17; Bankr. Doc. #532) denying the motion.  No appeal was filed by any party in interest.

## C.  **Adversary Proceedings**

On March 16, 2009, Pessin, through counsel, filed a Complaint (Doc. #4-18; Bankr. Doc. #550) against RCMP, Christopher Wartella, and Stanley "Rick" Malinowski in the Bankruptcy case and paid the filing fee.  The five-count Complaint alleged breach of contract (Count I), constructive fraud (Count III), and violation of the Florida Deceptive and Unfair Trade Practices Act against all three defendants, and tortious interference (Count II) and breach of fiduciary duty (Count V) against RCMP.

On March 18, 2009, a form Order of Conditional Dismissal (Doc. #4-19; Bankr. Doc. #551) was entered because the caption on Pessin's Complaint incorrectly reflected the Chapter 11 bankruptcy caption and not an adversary proceedings caption.  Pessin was provided 10 days to cure the defect, or else the document would be stricken.

On March 27, 2009, Pessin through counsel filed a First Amended Complaint (Doc. #2-1; Bankr. Doc. #554; Adv. Doc. #1) in an adversary proceeding (the Adversary Complaint) and a case number was assigned.  The docket sheet in the adversary proceeding reflects this is the first document filed.  The allegations and claims in the Adversary Complaint were identical to those in the original Complaint filed on March 16, 2009, in the underlying

bankruptcy case.  Also on March 27, 2009, Pessin's attorney filed a Motion to Withdraw (Doc. #2-2; Adv. Doc. #3) in the adversary proceeding citing irreconcilable conflicts with Pessin.  Pession filed an Objection (Doc. #2-3; Adv. Doc. #8) to the motion to withdraw.

On May 4, 2009, RCMP and Wartella filed a Motion to Dismiss With Prejudice, or in the Alternative, for Summary Judgment By RCMP Enterprises, LLC and Christopher Wartella, Individually (Doc. #2-4; Adv. Doc. #9) in the adversary proceeding.  Defendants asserted that: (1) the Adversary Complaint was time barred because the Confirmation Order directed that it be filed within 180 days, that the deadline was March 13, 2009, and the Adversary Complaint was filed on March 27, 2009; (2) the finding of good faith in the Confirmation Order precluded Pessin from asserting the issues raised in the Adversary Complaint based upon *res judicata*, collateral estoppel, and law of the case; (3) Pessin's claims were derivative of the Debtors and had been previously released by Debtors, and Pessin is the sole shareholder of and in privity with the Debtors; (4) as a matter of law, Pessin could not establish any damages because her equity interests in the Debtors were absolutely worthless; and (5) Pessin failed to properly serve process on defendants.[4]  On May 11, 2009, the Bankruptcy Court filed a notice

_____

[4]This issue was raised before the Bankruptcy Court, doc. #2-20, pp. 20-21, but not reached or ruled upon, and not raised by
(continued...)

-16-

scheduling a hearing on the motion for June 18, 2009. (Adv. Doc. #11.)

On June 2, 2009, the Bankruptcy Court entered an Order (Doc. #2-12; Adv. Doc. #16) granting Pessin's attorney's motion to withdraw. Pessin thereafter filed two *pro se* motions to continue the hearing on the motion to dismiss/summary judgment, which were denied by the Bankruptcy Court in a June 15, 2009 Order. (Doc. #2-16; Adv. Doc. #23). On June 17, 2009, Pessin, proceeding *pro se*, filed an Amended Complaint in the adversary proceeding. (Adv. Doc. #24.)[5] On June 18, 2009, Pessin filed a *pro se* Objection to Motion to Dismiss and For an Extension of Time to Prepare New Counsel (or pro-se) or in the Alternative Objection to Motion to Dismiss (Doc. #2-17; Adv. Doc. #26). Pessin requested additional time to prepare in light of the withdrawal of her attorney, and in the alternative requested that the pending motion to dismiss or for summary judgment be denied because defendants failed to address the facts of the case.

---

[4](...continued)
cross-appeal. The Court declines to address this argument.

[5]This Amended Complaint added four individual defendants, additional members of RCMP, and added a slander of title claim as Count VI. At the June 18, 2009 hearing, the Bankruptcy Court acknowledged its filing but did not treat it as the operative pleading, and Pessin stated that summonses had issued but the parties remained unserved as to the *pro se* Amended Complaint. (Doc. #2-20, pp. 28-29.)

On June 18, 2009, the Bankruptcy Court conducted a hearing (Doc. #2-20) on the motion to dismiss/summary judgment.  At the hearing, counsel for RCMP summarized the underlying history in the bankruptcy case, including confirmation.  In particular, counsel repeated the Bankruptcy Court's March 5, 2008, confirmation hearing finding that "Debtors were and are dead economically as the[y] come when they arrived at the court.  There is obviously no question they were insolvent then and insolvent today."  (Doc. #2-20, pp. 11-12)(quoting Doc. #4-22, p. 97, ll. 1-5).  Counsel then summarized the bases for seeking dismissal.  Pessin responded to the issues raised by counsel, and argued that a summary judgment notice should have issued in the case based on her *pro se* status. (Id., pp. 22-23.)

On June 29, 2009, the Bankruptcy Court issued an Order Granting Motion to Dismiss With Prejudice, or in the Alternative, for Summary Judgment By RCMP Enterprises, LLC and Christopher Wartella, Individually (Docs. ## 1-2; 2-19).  The Bankruptcy Court found: (1) the Adversary Complaint was untimely because it was filed outside the 180 day time limitation established in the Confirmation Order; (2) the causes of action and claims in the Adversary Complaint and argued by Pessin were derivative of claims released by the Debtors and the estates under the confirmed Plan; (3) the good faith findings made by the Bankruptcy Court in connection with the debtor in possession financing and confirmation

were binding on Pessin under principles of collateral estoppel and law of the case, thereby precluding allegations of fraud committed during the Chapter 11 cases; and (4) Pessin could not have suffered damages to her equity interests because those interests are and were valueless based on the Bankruptcy Court's prior determination that the Debtors were insolvent and dead economically on the petition date and were also insolvent as of the confirmation hearing. In the absence of cognizable damages, the Bankruptcy Court found no cause of action could be maintained by Pessin. (Doc. #1-2.)

On July 8, 2009, Pessin filed a Motion to Make Additional Statement of Facts Pursuant to Rule 7052 F.R.B.P. to Amend Final Judgment and Vacate Previous Order of Dismissal With Prejudice 9023 F.R.B.P. (Doc. #2-21; Adv. Doc. #33). On July 17, 2009, the Bankruptcy Court entered an Order (Doc. #2-23; Adv. Doc. #40) denying the motion.

On July 9, 2009, Pessin filed a Notice of Appeal (Doc. #2-22) from the June 29, 2009 Order Granting Motion to Dismiss With Prejudice, or in the Alternative, for Summary Judgment By RCMP Enterprises, LLC and Christopher Wartella, individually.

## III.

Appellant challenges both the decision on the motion to dismiss and the decision on the motion for summary judgment. For the reasons set forth below, the Court finds that the Bankruptcy

Court erred in both decisions, and that the errors require reversal
and remand.

## A.  Motion to Dismiss:  Timeliness of Adversary Complaint

Appellant argues that the Bankruptcy Court erred in dismissing
the Adversary Complaint as untimely because it was in fact timely
filed, and she was entitled to an evidentiary hearing to establish
that fact.  Appellees argue, as they did before the Bankruptcy
Court, that the record establishes Pessin had 180 days from
September 18, 2008 to file an adversary complaint, that she filed
it on March 27, 2009, and that this filing was outside the 180 day
time limitation.  The Court concludes that while Pessin was not
entitled to an evidentiary hearing on the matter, the record
establishes that the adversary Complaint was timely filed.

As summarized above, the adversary Complaint was filed with
the Clerk of the Bankruptcy Court on March 16, 2009.  Although
filed in the underlying bankruptcy case and not as a separate
adversary proceeding, this still constitutes being "filed" because
an adversary proceeding "is commenced by filing a complaint with
the court."  Fed. R. Civ. P. 3, adopted by Fed. R. Bankr. P. 7003.
In an adversary proceeding, one way in which a paper is "filed" is
"by delivering it: (A) to the clerk; . . ."  Fed. R. Civ. P.
5(d)(2), adopted by Fed. R. Bankr. P. 7005.  "Clerk" includes the
bankruptcy clerk.  Fed. R. Bankr. P. 9001(3).  "The clerk must not
refuse to file a paper solely because it is not in the form

prescribed by these rules or by a local rule or practice."  Fed. R. Civ. P. 5(d)(4), adopted by Fed. R. Bankr. P. 7005.  This is the same as the general rule in bankruptcy proceedings: "The clerk shall not refuse to accept for filing any petition or other paper presented for the purpose of filing solely because it is not presented in proper form as required by these rules or any local rule or practices."  Fed. R. Bankr. P. 5005(a)(1).  Therefore, the adversary complaint was "filed" on March 16, 2009.

The Order directing Pessin to file any adversary complaint within 180 days was filed on Thursday, September 18, 2008. Therefore, the 180 day period began the next day, Friday, September 19, 2008.  Fed. R. Bankr. P. 9006(a)(1)(A).  The one hundred eightieth day from September 19, 2008 was March 17, 2009.[6]  Since the adversary Complaint was filed on March 16, 2009, it was timely filed.

Even if the adversary Complaint was not "filed" on March 16, 2009, Pessin was entitled to rely on the Bankruptcy Court's order which gave her ten additional days to correct the filing error. The conditional dismissal Order of the Bankruptcy Court did not dismiss the complaint.  Rather, the Bankruptcy Court expressly provided an additional ten days to cure the caption of the filing, and Pessin's attorney cured the defect in a timely fashion by

---

[6]September 19-30, 2008:  12 days; October 2008:  31 days; November 2008:  30 days; December 2008:  31 days; January 2009:  31 days; February 2009:  28 days; March 2009:  17 days = 180 days.

filing an identical Amended Complaint on March 27, 2009.  A party is entitled to rely upon such an order, <u>In re Demos</u>, 57 F.3d 1037, 1039 (11th Cir. 1995), and Pessin reasonably did so by filing the amended complaint with a proper caption within the extended time period.

Therefore, the Bankruptcy Court's finding that the Adversary Complaint was untimely was clearly erroneous, and the dismissal with prejudice of the Adversary Complaint for untimeliness was contrary to law.  That portion of the Order is reversed, with instructions that it be vacated.

**B.  Summary Judgment Decision**

Read liberally, appellant challenges the summary judgment portion of the Order on both procedural and substantive grounds. Procedurally, Pessin argues that she should have been given a continuance of the hearing in order to present her side of the case, and therefore the Bankruptcy Court erred in denying her several motions for a continuance.  Substantively, Pessin argues that the Bankruptcy Court erred in its findings and conclusions on the merits.

**(1) Procedural Issues**

At the time the motion for summary judgment was filed on May 4, 2009, Pessin was represented by counsel, but her attorney had a motion to withdraw pending.  The motion to withdraw was granted on June 2, 2009, and Pessin was representing herself as of that date.

The hearing on the summary judgment motion was noticed on May 11, 2009, and ultimately held on June 18, 2009.

The usual summary judgment rule, Fed. R. Civ. P. 56, applies in adversary proceedings.  Fed. R. Bankr. P. 7056; In re Delco Oil, Inc., 599 F.3d 1255, 1257 (11th Cir. 2010).  At the time[7], Rule 56 required that the nonmovant "must be served [with the motion] at least 10 days before the day set for the hearing," Fed. R. Civ. P. 56(c) (2007), and the response "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2) (2007).  "An opposing party may serve opposing affidavits before the hearing day."  Fed. R. Civ. P. 56(c)(2007).  The purpose of Rule 56(c) has always been to give the nonmoving party a reasonable and meaningful opportunity to challenge a summary judgment motion. Burns v. Gadsden State Cmty. Coll., 908 F.2d 1512, 1516 (11th Cir. 1990).  In addition to the ten-day notice before the hearing, a pro se litigant must receive notice of "the summary judgment rules, of h[er] right to file affidavits or other material in opposition to the motion, and of the consequences of default."  Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).  This heightened

_____

[7]Rule 56 was amended effective December 1, 2009, to increase the time period to 21 days; it is scheduled to be amended again effective December 1, 2010, to eliminate a specific time period. See Fed. R. Civ. P. 56 advisory committee's notes.

notice is not required where the litigant is represented by counsel, <u>Johnson v. Pullman, Inc.</u>, 845 F.2d 911, 913-14 (11th Cir. 1988), although service of an adequate notice on counsel prior to withdrawal would satisfy the rule as to a *pro se* litigant. <u>Dunn v. Air Line Pilots Ass'n</u>, 193 F.3d 1185, 1200 n.20 (11th Cir. 1999).

Until June 2, 2009, Pessin was represented by an attorney in the adversary proceeding.  As of that date, she became a *pro se* litigant and was faced with a summary judgment hearing 16 days later.  The record does not reflect that Pessin was served with "express, ten-day notice of the summary judgment rules, of h[er] right to file affidavits or other material in opposition to the motion, and of the consequences of default." <u>Griffith</u>, 772 F.2d at 825.[8]  The record also does not reflect service of an adequate notice on prior counsel.  Under the circumstances of this case, this lack of notice was not harmless as to all issues.  The failure to provide adequate notice to the *pro se* litigant requires reversal of the summary judgment order.  <u>Jones v. Automobile Ins. Co. Of Hartfort, Conn.</u>, 917 F.2d 1528, 1532 (11th Cir. 1990).

Pessin's *pro se* requests, after withdrawal of counsel, to continue the hearing or obtain additional time to obtain and prepare new counsel to respond were denied.  A party may be given a continuance to conduct additional discovery to respond to a

---

[8]The Court notes that Pessin raised the issue of lack of "special notice" based on her *pro se* status. (Doc. #2-20, pp. 22-23.)

motion for summary judgment.  Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1327 n.6 (11th Cir. 2006); Fed. R. Civ. P. 56(f)(2) (2007). Granting a continuance is within the broad discretion of the Bankruptcy Court, and will not be overturned unless arbitrary or unreasonable.  Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1351 (11th Cir. 2003) (quotations omitted).  The denial of a requested continuance is reviewed by considering "(1) the moving party's diligence in its efforts to ready its case prior to the date set for hearing; (2) the likelihood that the need for a continuance would have been remedied had the continuance been granted; (3) the extent to which granting the continuance would have inconvenienced the court and the opposing party; (4) the extent to which the moving party might have suffered harm as a result of the district court's denial."  Rink v. Cheminova, Inc., 400 F.3d 1286, 1296 (11th Cir.), cert. denied, 546 U.S. 935 (2005). None of these factors weigh in favor of denying Pessin at least one continuance of the summary judgment hearing.  Given the extended nature of the underlying bankruptcy proceedings and the nature of the issues raised or implicated by the summary judgment motion, as discussed below, and the recent withdrawal of counsel, it was an abuse of discretion not to grant at least one continuance.

**(2) Substantive Issues**

A Bankruptcy Court should grant summary judgment only if "the pleadings, the discovery and the disclosure materials on file, and

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2007). An appellate court reviews the Bankruptcy Court's grant of a summary judgment *de novo*, applying the same summary judgment legal standard applicable in the Bankruptcy Court and viewing all evidence and reasonable inferences in favor of the non-moving party. <u>In re Delco Oil, Inc.</u>, 599 F.3d at 1257.

The Court concludes that none of the Bankruptcy Court's findings and conclusions satisfy the summary judgment standard. The summary judgment record clearly reveals material issues of disputed facts, and defendants were not entitled to judgment as a matter of law on the undisputed material facts which were in the record.

**(a) Claims in Adversary Proceeding:**

The Court must first determine what claims were presented in the adversary proceeding. The only plaintiff is Pessin individually. All counts in the Adversary Complaint were premised on the following alleged facts:

Pessin was the equity holder, creditor, and managing member of Shell Cove Marine Properties, Inc. (Shell Cove), which owned four specifically identified properties adjacent to the Weeks Fish Camp. (Adv. Doc. #1, ¶ 5.) In April 2004, Shell Cove obtained a secured mortgage for the property. The mortgaged was eventually foreclosed

upon and a final judgment entered against Shell Cove in August, 2005. (Id., ¶¶ 6-7.) Natoli, as Trustee, purchased the final judgment in September, 2005. On April 6, 2006, Pessin and RCMP executed a Confidentiality and Non-Compete Agreement. (Id., ¶¶ 8-9.) Pessin agreed to disclose confidential and proprietary information about the property to RCMP, and RCMP agreed not to use the information regarding the property other than for purposes of its business with Pessin. RCMP also agreed not to acquire any lands within the property without Pessin's consent, and not to use the confidential information for the purpose of bidding on the purchase of the property in any subsequent bankruptcy proceeding. (Id., ¶ 9.) On April 14, 2006, Shell Cove filed for Chapter 11 relief, and on June 2, 2006, Shell Cove and Weeks Landing executed a Term Sheet with RCMP, Wartella and Malinowski. (Id., ¶¶ 10-11.) Pursuant to this Term Sheet, RCMP and Pessin would create a limited liability company referred to as NEWCO, of which both Pessin and RCMP would each own a 50% interest. Ownership of the property would be transferred to NEWCO, and upon the creation of an operating agreement NEWCO would become known as United Penn Investment Group, LLC. (Id., ¶¶ 12-13.) Eventually, RCMP agreed to contribute $4 million to NEWCO to assist Pessin satisfy or refinance the mortgage owned by Natoli. Under this agreement, RCMP had 53 days from June 1, 2006 to complete its due diligence regarding the property. If RCMP thereafter still wanted to acquire full ownership in the property, it and Pessin would negotiate the

terms of a buyout of Pessin's equity in NEWCO for a proposed price of $5 million.  These terms were to be embodied in a plan of reorganization that would be submitted as part of Shell Cove's bankruptcy proceeding.  (Id., ¶ 14.)  Contrary to the terms of this agreement, and unknown to and without the consent of Pessin, on September 7, 2006, RCMP utilized the name United Penn Investment Group, LLC to execute a real estate broker agreement to acquire the property for itself.  RCMP then "brazenly" submitted a reorganization plan to the Bankruptcy Court on July 31, 2007, which proposed exactly what the Confidentiality Agreement prohibited: the direct acquisition of the property by RCMP free of any adverse claims or interests, i.e., obtaining title to the same land that RCMP had agreed not to bid on or acquire.  (Id., ¶¶ 16-17.)

The breach of contract claim in Count I, the constructive fraud claim in Count III, and the breach of fiduciary duty claim in Count V are premised upon defendants' actively bidding on property without Pessin's knowledge or consent, seeking to acquire the property as part of the bankruptcy case, and using confidential information to bid on or acquire the property during the bankruptcy case.  Count II alleged that RCMP tortiously interfered with Pessin's and Shell Cove's relationship with Natoli, by acquiring property for itself through the Bankruptcy Court's approval of the reorganization plan.  Count IV alleges violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) by various unfair and deceptive acts committed during the bankruptcy case.

**(b) Derivative Claims Barred by Release:**

The first basis for the Bankruptcy Court's granting summary judgment was that all the adversary proceeding claims were derivative of claims released by the Debtors and the Debtors' estates under the confirmed reorganization Plan.  The Court concludes that the summary judgment record in this case did not establish that all the claims were derivative claims.  Additionally, the undisputed facts did not establish that all these claims were released by Debtors, or that any release by Debtors was binding upon Pessin individually.

**(1) Derivative or Direct Claims:**

The Eleventh Circuit has distinguished derivative claims from direct claims as follows:

> The definitions of a derivative claim under both federal and Florida state law are similar and, for the purposes of this suit, the discrepancies are not relevant. In traditional derivative suits, shareholders sue to enforce a right belonging to the corporation for which the corporation itself could have brought suit. [ ] A claim may be brought in a direct action, however, where the injury was sustained directly by the plaintiff bringing the suit and is separate and distinct from injuries sustained by the corporation and all other shareholders equally.

Medkser v. Feingold, 307 Fed. Appx. 262, 264 (11th Cir. 2008)(citations omitted).  As was stated in Karten v. Woltin, 23 So. 3d 839, 840-41 (Fla. 4th DCA 2009), generally a shareholder may bring a direct suit only in his or her own right to redress an injury sustained directly by that person individually.  Thus, while

it may be "a misnomer to speak of the filing of the petition on behalf of the corporation as a derivative action," it is clear that a Bankruptcy Court cannot entertain a claim by someone who purports to act on behalf of the corporation but does not have such authority.  Price v. Gurney, 324 U.S. 100, 105, 106 (1945).

The Court agrees with the Bankruptcy Court's implicit legal conclusion that derivative claim principles apply to a Florida limited liability company as well as to a corporation.[9]  Indeed, both federal law and state law set forth procedures to be followed when a derivative action is filed in connection with a limited liability company.  Fed. R. Civ. P. 23.1 (2002); Fla. Stat. § 608.601 (1999).  The problem is not the legal principles, but their application in this case.

Appellees argue that all the claims in Pessin's Adversary Complaint relate to actions and transactions by and between Debtors and RCMP, and necessarily derive from that relationship.  Even if literally true, that is not the type of "derivative" suit barred by the derivative suit principles.  A cause of action may "derive" from a certain relationship or set of facts without being a

---

[9]A Florida limited liability company is not a corporation, Skylake Ins. Agency, Inc. v. NMB Plaza, LLC, 23 So. 3d 175, 177 (Fla. 3d DCA 2009), but is a hybrid providing the shield from personal liability found in corporations and flow-through tax advantages found in partnerships, Ruggio v. Vinning, 755 So. 2d 792, 795 n.2 (Fla. 2d DCA 2000).

"derivative suit" which attempts to assert the rights of the entity and not the individual.

The Court looks "to the body of the complaint to determine whether the injury is direct to the shareholders or to the corporation." Karten, 23 So. 3d at 841.  The Adversary Complaint makes no attempt to comply with the derivative suit pleading requirements of Rule 23.1(b) or Fla. Stat. § 608.601.  Pessin individually is the only named plaintiff.  Pessin signed the Confidentiality Agreement individually, as well as on behalf of the LLCs.  The counts are reasonably construed to contain both direct claims, i.e., based on misbehavior alleged to have been detrimental to Pessin personally, not to the entities; and derivative claims, i.e., attempting to assert the rights of Shell Cove.  Count I, for example, alleges damages to Shell Cove and Pessin (Adv. Doc. #1, ¶ 24), even though the "Wherefore" clause only seeks damages as to Pessin.  Count II alleges that RCMP sabotaged the relationship between Shell Cove and Natoli (id., ¶ 29), and that Shell Cove and Pessin suffered damages (id., ¶ 33), even though only Pessin seeks damages in the "Wherefore" clause.  Count III alleges that RCMP abused its fiduciary relationship with Shell Cove and Pessin (id., ¶ 38) and that Shell Cove and Pessin suffered damages (id., ¶ 39), although only Pessin seeks damages in the "Wherefore" clause. Count IV alleges that Shell Cove and Pessin were consumers, that RCMP committed unfair and deceptive acts concerning Shell Cove, and that Shell Cove and Pessin suffered damages (id., ¶¶ 42-44).  Count

V alleges that RCMP had breached its fiduciary duty towards Shell Cove and Pessin, and both suffered damages (id., ¶¶ 46, 50).

The record is undisputed that Shell Cove released its claims against RCMP and its members, and therefore no derivative suit could be brought on their behalf. Summary judgment as to Pessin's individual claims, however, was inappropriate to remedy those portions of the counts which appear to be an attempt to assert the derivative claims of Shell Cove. The Bankruptcy Court could have stricken portions of the Adversary Complaint, or dismissed the Adversary Complaint with leave to amend, or granted summary judgment as to the portions which allege derivative claims. Granting summary judgment as to Pessin's individual claims because they were intermingled with derivative claims, as arguably allowed by Fed. R. Civ. P. 8(d)(2)(2007), was erroneous.

### (2) Claims Released:

Even a direct claim can be released, so the next issue is whether Pessin released her individual claims in the underlying Chapter 11 bankruptcy case. The Bankruptcy Court did not reach this issue (having found the claims to be derivative and therefore barred), but a reviewing court can affirm summary judgment on any legal ground, regardless of the grounds addressed and relied upon by the lower court. Thompkins v. Lil' Joe Records, Inc., 476 F.3d 1294, 1302 (11th Cir.), cert. denied, 552 U.S. 1022 (2007);

Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1235 (11th Cir. 2004).[10]

It is clear that Pessin's individual claims were not released by virtue of the confirmation of the reorganization plan.   As summarized above, Pessin objected to the initial release language in the proposed Joint Reorganization Plan, and the issue was the subject of a fair amount of discussion.   The proponents of the Joint Plan agreed to a modification which withdrew the release language as to Pessin individually, and filed a Third Modification with their proposed language, to which Pessin also objected.   In the September 15, 2008, Order Confirming Plan, the individual claims by Pessin were not released, and a 180 day time limit was imposed for filing such claims in an adversary proceeding.

Appellees do not rely upon any release provided in the September 15, 2008 Order Confirming Plan, but rather rely upon the release authorized in the May 1, 2007 Order (Doc. #2-5) approving additional debter-in-possession financing from RCMP.   Part of the consideration for RCMP providing the additional funds was a broad General Release to be given by debtors Weeks Landing and Shell Cove.   The General Release (Doc. #2-6) was signed on July 18, 2007, on behalf of Weeks Landing and Shell Cove by Gerard McHale, as their Chief Restructuring Officer.   Weeks Landing and Shell Cove

---

[10]The Florida courts, being generally more colorful than federal courts, refer to this as the "tipsy coachman" doctrine. Butler v. Yusem, 3 So. 3d 1185, 1186 n.3 (Fla. 2009).

broadly released RCMP and others of all claims of every kind whether accrued or not and whether known or not which the Releasor ever had or may have based in whole or in part on anything "from the beginning of the world" to the date of execution of the Release related to the bankruptcy cases.

Appellees argue that any possible cause of action was released by virtue of the Bankruptcy Court approved and executed General Release.   Appellees further argue that Pessin, as the sole shareholder of the Debtors, was in privity with the Debtors for purposes of the release by the estates, and is therefore bound by the General Release.   These arguments fail to support summary judgment for several reasons.

First, the record establishes that RCMP waived its right to claim release against Pessin individually.   After the May 1, 2007 Order, RCMP submitted a Third Modification, paragraph 15 of which stated: "Notwithstanding anything to the contrary in the Plan, nothing within the Plan shall be deemed to release, discharge, or modify **any claim** that Michelle Pessin, individually, may have against either RCMP or Natoli."   (Bankr. Doc. #520, ¶ 15)(emphasis added).   The Third Modification also provided that Pessin would have 180 days to file an adversary proceeding "in connection with or related to **any** alleged act, conduct, action, error or omission, or other behavior of any kind in or in connection with the above-captioned Debtors and bankruptcy cases."   (Bankr. Doc. #520, ¶

16)(emphasis added).   The Order Confirming Plan (Doc. #4-14) adopted the Third Modification and provided: "Nothing in the Joint Plan shall be deemed to release, discharge, or modify **any claim** that Pessin, individually, may have against either RCMP or Natoli." (Doc. #4-14, p. 2, ¶ 2)(emphasis added).   No exception was carved out for individual claims which had arguably been released by the May 1, 2007 Order.

Second, principles of judicial estoppel prevent appellees from asserting that Pessin's individual claims were released.   RCMP told the Bankruptcy Court that it agreed Pessin could bring **any** individual claim within 180 days.   In the subsequent adversary proceeding, RCMP asserted that "any" individual claim did not include those individual claims Pessin had released the prior year, and that the release survives the Third Modification and the Order Confirming Plan allowing her to bring "any" claim.   The purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."   New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001)(citations omitted).   The record establishes that is what RCMP has done.

Third, there is no record evidence that the General Release was binding on Pessin individually.   The General Release was signed by McHale on behalf of Weeks Landing and Shell Cove.   Both of these entities are Florida limited liability companies (LLC).   As such,

each is a distinct entity separate from its members and managing member.  There is no authority supporting the proposition that an LLC releases not only its own rights but the individual rights of any of its members.  Nothing in the summary judgment record establishes that either Weeks Landing or Shell Cove were authorized to release claims belonging to Pessin individually.  The General Release is void to the extent it purports to release claims over which neither entity had authority.

Finally, the General Release cannot have justified summary judgment as to all claims because, even if Pessin individually was bound by it, portions of the claims in the Adversary Complaint are outside the scope of the General Release.  A claim, including one filed in an adversary action, cannot be barred if the claim is beyond the scope of the release.  In re Managed Care Litig., 605 F.3d 1146 (11th Cir. 2010); Abis v. Tudin, D.V.M., P.A., 18 So. 3d 666, 670 (Fla. 2d DCA 2009).  The General Release releases claims occurring on or before the date it was executed, no matter when the claims accrued.  The General Release was signed on June 18, 2007.  The Adversary Complaint alleges that the misconduct of defendants included the filing of the proposed reorganization plan by RCMP and efforts culminating in having that plan confirmed.  That plan was filed on July 31, 2007, after the July 18, 2007 execution of the General Release.  Since a portion of the alleged conduct took place after the General Release was signed, and the General Release does not apply to that conduct, summary judgment as to that conduct

cannot be premised on the General Release.  <u>Pettinelli v. Danzig</u>, 722 F.2d 706 (11th Cir. 1984).

**(c) Prior Good Faith Findings:**

The Bankruptcy Court stated: "Third, the Court finds that the good faith findings made by the Court in connection with the debtor in possession financing and confirmation are binding upon the Plaintiff as collateral estoppel and law of the case, thus precluding the allegations of fraud during the Chapter 11 cases." The Court finds that neither principle provides a legal basis to have granted summary judgment as to Pessin's individual claims.

First, the Bankruptcy Court's finding that claims of fraud during the Chapter 11 cases were precluded did not impact the breach of contract claim, the tortious interference claim, and the breach of fiduciary duty claim, which were not based upon fraud. Second, "[t]he law of the case doctrine bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case."  <u>In re Farris</u>, 330 Fed. Appx. 833, 835 (11th Cir. 2009)(quoting <u>United States v. Jordan</u>, 429 F.3d 1032, 1035 (11th Cir. 2005)).  Since there was no earlier appeal in this case, the law of the case doctrine has no application.

Third, the good faith findings are necessarily limited to whether the plan was proposed with the legitimate and honest purpose to reorganize with a reasonable hope of success, and cannot

be extended further for preclusion purposes.  In re Piper Aircraft Corp., 244 F.3d 1289, 1299-1300 (11th Cir. 2001).  Extrapolating these good faith findings as being conclusive to the business relationship between Pessin individually and RCMP and its members was improper in the summary judgment context.

### (d) Lack of Damages:

The Bankruptcy Court also stated: "Finally, the Court has previously determined that the debtors were insolvent and dead economically on the petition date, and were also insolvent as of the confirmation hearing.  This means that Plaintiff could not have suffered damages to her equity interests, which are and were valueless.  Absent cognizable damages, no cause of action can be maintained."  (Doc. #1-2, p. 2.)  The Court finds that this does not support the entry of summary judgment in this case.

While damages are an element of each claim, nothing in Florida law limits Pessin's individual damages to the change in value of her equity interests in the LLCs or the corporation.  For example, in fraud cases Florida uses a "flexibility" theory of damages which allows an injured party to recover either the out-of-pocket loss or the benefit of the bargain loss.  Minotty v. Baudo, 42 So. 3d 824 (Fla. 4th DCA 2010).  Additionally, the record is not undisputed as to material facts, despite the Bankruptcy Court's findings to the contrary.  The two LLCs involved here, Weeks Landing and Shell Cove, were in fact solvent according to their schedules at the time

of the filing of the petitions.  The motions filed by Debtors clearly asserted they were far from "dead economically" or insolvent.

**V.**

In sum, the Court finds that the Adversary Complaint was timely filed, and the factual finding to the contrary was clearly erroneous and the dismissal of the Adversary Complaint constituted an error of law.  Because Pessin was proceeding *pro se* by the time of the hearing on the summary judgment motion, she was entitled to a written notice complying with <u>Griffith v. Wainwright</u>, but did not receive such a notice.  Pessin was also entitled, under the circumstances of this case, to at least one continuance of the summary judgment hearing.

The evidence which was undisputed and not capable of being disputed, establishes that Shell Cove did release its claims against appellees, this release was confirmed by the Bankruptcy Court, and no party in interest appealed the confirmation. Therefore, Pessin could not bring a derivative suit against appellees attempting to assert Shell Cove's claims.  While the Adversary Complaint was largely framed as Pessin's individual claims, portions could reasonably be read as an attempt to assert the derivative rights of Shell Cove.  To that extent, and that extent only, the Adversary Complaint was due to be corrected to eliminate such derivative claims.  The Bankruptcy Court could do

this by striking certain allegations, dismissing the complaint with leave to refile, or granting partial summary judgment. The Bankruptcy Court could not, however, eliminate Pessin's individual claims in the process. This is not to say that Pessin's individual claims have any merit. That issue was not reached by the Bankruptcy Court and is not before this Court.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The Bankruptcy Court's Order Granting Motion to Dismiss With Prejudice, or in the Alternative, for Summary Judgment By RCMP Enterprises, LLC and Christopher Wartella, Individually is **REVERSED**, and the matter **REMANDED** to the Bankruptcy Court to **VACATE** the Order Granting Motion to Dismiss With Prejudice, or in the Alternative, for Summary Judgment By RCMP Enterprises, LLC and Christopher Wartella, Individually.

2. The Bankruptcy Court shall enter an appropriate order as to the portions of the claims in the Adversary Complaint which purport to set forth actual derivative claims of Shell Cove, and

may take whatever other steps it deems necessary which are consistent with this Opinion and Order.

3.   The Clerk shall enter judgment accordingly, transmit a copy of this Opinion and Order and the Judgment to the Clerk of the Bankruptcy Court, terminate the appeal, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___13th___ day of October, 2010.

_____
JOHN E. STEELE
United States District Judge

Copies:
Clerk, U.S. Bankruptcy Court
Hon. Alexander L. Paskay
Counsel of record